# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES R. BRADFORD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:15-CV-189-RLW |
| CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying James R. Bradford's ("Bradford") application for disability insurance benefits under Title II and Title XVI of the Social Security Act.

**I.  Background**

Bradford was born in 1960, and he alleged that he became disabled beginning June 24, 2012. (Tr. 165-72). Bradford alleged disability based upon pancreatitis, left eye impairment, and broken right ankle. (Tr. 165, 171, 190). Bradford had past relevant work as a commercial cleaner and materials handler.

The Social Security Administration ("SSA") denied Bradford's application for benefits, and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Bradford's request and a hearing was held on October 4, 2013. The ALJ issued a written decision on November 15, 2013, upholding the denial of benefits. (Tr. 14-27). Bradford filed a timely Request for Review of Hearing Decision with the Appeals Council (Tr. 13). The

Appeals Council denied Bradford's Request for Review. (Tr. 1-4). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Bradford filed this appeal on January 27, 2015. (ECF No. 1). Bradford filed a Brief in Support of his Complaint on May 1, 2015. (ECF No. 12). The Commissioner filed a Brief in Support of the Answer on June 26, 2015. (ECF No. 15). Bradford filed a reply brief on July 8, 2015. (ECF No. 16).

## II. Decision of the ALJ

The ALJ found that Bradford had the following severe impairments: status post right calcaneal fracture; mild degenerative disease of the spine; traumatic cataract of the left eye. (Tr. 19). The ALJ, however, determined that Bradford did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ found that Bradford had the residual functional capacity ("RFC") to perform medium work, except the claimant can frequently climb ramps and stairs; occasionally use foot and leg controls on the right, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolding; avoid concentrated dog and cat dander; and avoid all unprotected heights, hazardous machinery, and industrial vibrations. (Tr. 20-25). The ALJ found that Bradford was unable to perform any past relevant work. (Tr. 25-26). The ALJ determined that, based on Bradford's RFC, jobs exist in significant numbers in the national economy that Bradford could perform. (Tr. 26-27). Consequently, the ALJ found that Bradford was not disabled. (Tr. 26).

## III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Hearing Testimony

Bradford testified on October 4, 2013, as follows:

Bradford is not working and last worked on June 22, 2012. (Tr. 35). At that time, Bradford was working as a commercial cleaner for four hours a week. (Tr. 35). He was making $7.25/hour and made around four-hundred dollars a month. (Tr. 36). His only full-time employment was as a material handler. (Tr. 36). He carried materials between 50 and 100 pounds. (Tr. 36). He had a history of abusing alcohol, but it has been 15 years since he did so. (Tr. 36-37). He does not use street drugs, except marijuana, and does not abuse prescription drugs. (Tr. 37-38). He has never had a driver's license. (Tr. 37). He obtained a GED in 1977 and writes and understands English. (Tr. 37). He has never been incarcerated. (Tr. 37). He has no work-related certifications. (Tr. 37-38).

Bradford's attorney states that Bradford fell off of a ladder on June 24, 2012 and fractured his right ankle. (Tr. 39). Bradford's attorney asserts that Bradford uses a cane because of his discomfort from his right ankle. (Tr. 39). Bradford's attorney states that Bradford can only be up on his leg for short period of time. He sits mostly, but must intermittently recline and elevate his leg to take pressure off of his lower back; he must do this for a total of three or four hours over the course of the day. Bradford's attorney says that Bradford's sleep is poor because of his physical discomfort and, as a result, he must nap during the day. (Tr. 40). Bradford's attorney claims that Bradford has migraine-like headaches in the eye, which incapacitates him one day per week. (Tr. 40). Finally, Bradford's attorney notes that Bradford is over 50, has only performed heavy labor, and lacks the capacity to perform even sedentary work. (Tr. 40).

Bradford received his cane from the hospital in July 2012. (Tr. 41). Before that, he was using crutches after he fractured his right ankle on June 24, 2012. (Tr. 41). He fell off of a ladder and broke his right ankle. (Tr. 42). He is 5 feet, 7 inches, and weighs 135 pounds. (Tr.

3

42). He can stand for an hour and 20 minutes some days. He can walk a couple of blocks. (Tr. 42). Some days he can get down on his hands and knees and move about. (Tr. 42). He is not physically able to crouch or squat down. (Tr. 43). He is right-handed. (Tr. 43). He can reach in all directions with either arm. (Tr. 43). He can lift only 10 pounds with his right arm because he gets a pain in his arm and side. (Tr. 43). He can lift 20 pounds with his left hand. (Tr. 43). He cannot push and pull a cart with wheels, carrying 50 pounds, for a distance of 25 steps. (Tr. 43). He can push an empty grocery cart with wheels over a smooth floor for 25 steps. (Tr. 43-44). The most he can push in a grocery cart is around 20 pounds. (Tr. 44).

He can make a fist with either hand. (Tr. 44). He can press his thumb to the fingers of each hand. (Tr. 44). He can see with his right eye, but his left eye has a cataract. (Tr. 44). Someone robbed him and hit him in the left eye with a crowbar. (Tr. 45). He had an indentation on his head above his eyebrow from the assault. (Tr. 47). His speech, hearing and sense of smell are all ok. (Tr. 45). He has been able to concentrate and pay attention during the proceeding. (Tr. 45-46). He is not sensitive to bright lights, loud noise, or darkness. (Tr. 46). He cannot be around dogs and cats. (Tr. 46). He last saw a physician at a Saint Louis University Hospital clinic for his ankle a couple weeks ago. (Tr. 46-47). He has no income and currently lives off of food stamps. (Tr. 47). He uses a cane when he is on his feet. (Tr. 47). Throughout the day, he has to lie down and elevate his foot, for a couple of hours total in a day. (Tr. 48). He also has back pain, leg pain, and side pain at night, which started when he fell off the ladder. (Tr. 48). He gets migraine-like pain in his eye about twice a week. (Tr. 49). Once a week the pain is so severe that it is incapacitating. (Tr. 49). When he gets one that bad, he takes a Vicodin and puts a cold towel over his eye. (Tr. 49). He does not sleep well at night. He has to take Vicodin to sleep. He is supposed to take one Vicodin but usually takes two because of the

4

pain. (Tr. 49-50). He went to the clinic for the pain in his eye on August 5. (Tr. 50). The doctor dilated his eye but did not do anything else. (Tr. 51).

Vocational expert Brian Wormer testified as follows:

The ALJ excluded commercial cleaner from past work because it was only part time and less than $400 per month, which leaves only material handler and laborer as past work at heavy and very heavy. (Tr. 51-52). The ALJ presented the first hypothetical person who is able to lift and carry occasionally 50 pounds, frequently 25 pounds; sit six hours out of an eight-hour day; stand and walk six hours out of an eight-hour day; the use right foot and leg controls is reduced to only occasionally and use of left foot and leg controls is unlimited; use of hand and arm controls, feeling, fingering, handling, and reaching overhead have no established limitations; never do ladders, ropes, or scaffolds; ramps and stairs only frequently; no established limitation on balancing, bending, or stooping; kneeling, crouching, crawling only occasionally; no established limitation on fumes, chemicals, dust, mold, but should avoid concentrated exposure to dog and cat dander; no established limitations on extremes of temperature; avoid all unprotected heights, hazardous moving machinery, and industrial vibration; decreased vision in the left eye, but person is able to see and avoid and perceive objects on all quadrants, including no peripheral loss. (Tr. 53). Mr. Wormer testified that this hypothetical person could not perform the past relevant heavy work; he would be able to perform unskilled, medium work. (Tr. 53, 54). Examples of unskilled, medium jobs are hand packager, machine packager, and kitchen helper. (Tr. 54).

The ALJ proposed the following second hypothetical person, who has the capability to walk at least two blocks; he would experience discomfort and pain with a history of right ankle fracture; the non-exertional limitation associated with pain and discomfort would be 4 percent of

the work day with loss productivity of 4 percent; he must be able to frequently respond to routine changes in the work setting; no established limitation on general public, supervisor, coworker interaction; able to do simple, repetitive, unskilled tasks. Mr. Wormer testified that this hypothetical person would be able to do the same medium, unskilled jobs as hypothetical person number one. (Tr. 55).

The ALJ proposed the following third hypothetical person: unable to stay on task more than 20 percent of the day because of the consumption of marijuana and other narcotics; loss of productivity of 20 percent; not able to interact promptly to routine changes; unable to interact with the general public, supervisors, and coworkers. (Tr. 55-56). Mr. Wormer testified that this hypothetical person would not be able to sustain full-time employment at any exertional level if he were off-task for 20 percent of the time. (Tr. 56).

The ALJ proposed the following fourth hypothetical person with the same limitations as in hypotheticals numbers one and two, and that person could still do simple, repetitive, unskilled tasks and interact without limitation with the general public, supervisors, and coworkers; but, because of medication and taking Vicodin once per day, the person would be off task a combined total of 5 percent of the workday, with 5 percent loss of productivity. (Tr. 56). Mr. Wormer testified that this person could still do the unskilled, medium jobs: hand packager, machine packager, and kitchen helper. (Tr. 57).

The ALJ proposed the following fifth hypothetical person: this person chose to use a cane provided at the hospital following his fracture of his leg and recuperation, and he continued to use that cane for support, which allowed him to walk two blocks. (Tr. 57). The cane is not required to stand, but used only as a personal choice for ambulation. (Tr. 57). Mr. Wormer

testified that this hypothetical person could still perform the same unskilled, minimum jobs previously identified. (Tr. 57).

The ALJ proposed the sixth hypothetical person who, because of persistent pain and discomfort, had to lie down and elevate his feet and take at least two additional breaks during the day of 15 minutes. (Tr. 57). Mr. Wormer testified that such a person would not be able to perform any employment described previously. (Tr. 57).

**B.     Medical Records**

Bradford's relevant medical records are summarized as follows:

On June 24, 2012, Bradford was seen for a right ankle fracture at St. Louis University Hospital after he fell off a ladder. (Tr. 282-309). Bradford was prescribed hydrocodone-acetaminophen every 4 hours as needed for pain. (Tr. 309). On July 2, 2012, Bradford was seen at St. Louis University Hospital. (Tr. 310-11). Bradford was dressed in a compressive dressing and a surgical packet was completed because he needed ORIF (Open Reduction Internal Fixation) surgery of the right calcaneus. (Tr. 323). Bradford was instructed to schedule the surgery. On July 9, 2012, Bradford was seen at by Emilio Bianchi at Smiley Urgent Care and was diagnosed with a sprained ankle as a result of his fall on June 24, 2012. (Tr. 250-53). On July 25, 2012, Sheila Cernicek, Director of Clean-Tech Company (former employer), indicated that the company did not have a desk job available for Bradford. (Tr. 185).

On August 1, 2012, Bradford filled out a Function Report for the Social Security Administration. (Tr. 207-17). He indicated that he sometimes has visitors. He can dress, bathe, care for his hair, shave, feed, and toilet by himself. He can prepare his own lunches. He can go shopping. He can pay bills, count change, and use a checkbook. He can watch television and listen to the radio. He can follow written instructions very well.

7

On August 2, 2012, Bradford was seen at St. Louis ConnectCare by Dr. Kang. (Tr. 357). Dr. Kang noted no significant change; no fracture or dislocation. (Tr. 357). On August 15, 2012, Bradford was seen by Dr. Lutey at Grace Hill. (Tr. 326-27). Bradford was prescribed tramadol and Tylenol-codeine. Dr. Lutey stated that Bradford was unable to work until September 4, 2012. (Tr. 328). Dr. Lutey stated that Bradford could return to work on September 4, 2012 on light work activity, and after three weeks could resume medium work activity. (Tr. 328). On September 5, 2012, Dr. Lutey renewed Bradford's prescription for Vicodin. (Tr. 329). On September 20, 2012, Bradford was seen at Grace Hill for evaluation of the pain in his eye and right ankle pain. (Tr. 330-336). He was diagnosed with a cataract and suspected glaucoma. He was instructed to return in a year. It was noted he is scheduled for surgery at SLU on October 11, 2012. On November 27, 2012, Bradford was seen at Grace Hill regarding a lump in his neck. (Tr. 338-39). On December 2, 2012, Bradford tested positive for marijuana. (Tr. 337). On January 7, 2013, Bradford was seen at Grace Hill for a refill of Vicodin. (Tr. 340). On March 5, 2013, Bradford was seen at Grace Hill for a lump in his neck. (Tr. 348). On March 10, 2013, Bradford tested positive for marijuana. (Tr. 341). On March 15, 2013, Dr. Lutey wrote Bradford and stated that his labs were normal, no further testing was necessary, and she would see him at his next scheduled appointment. (Tr. 35).

### IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the

8

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[1] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has

---

[1] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

9

done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial

evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V. Discussion

### A. Development of the RFC

Bradford contends that the ALJ failed to conduct a sufficient credibility analysis. (ECF No. 12 at 7). Bradford notes that he has a work history that includes physically difficult (or "heavy") exertion, as well as work through temporary services, which indicates a desire to work. (ECF No. 12 at 7). Bradford argues that the ALJ did not credit the third-party statement from Sheila Cernicek, Director of Human Resources at Clean-Tech, who stated that there was no desk job available for Bradford, but that his former heavy position would be available if he is released to perform such work by his physician. Bradford states that the ALJ also ignored, as part of Bradford's disability report, the field officer noted that Bradford limped and had difficulty moving because of his right ankle. (Tr. 187). The field officer also reported that Bradford "appeared to have difficulties proving [sic] me with medical information, as he struggled to remember doctor's names and treatment dates." (Tr. 187). Bradford claims that the ALJ should have considered this evidence as part of his credibility analysis. (Tr. 12 at 9). Bradford argues

11

that that ALJ should discuss corroborative lay statements, such as these, and make explicit credibility determinations, which he did not do. (ECF No. 12 at 10 (citing *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir. 1990)).

Bradford also argues that the ALJ did not include a narrative discussion of the rationale for the RFC assessment and the RFC is not supported by substantial evidence. (ECF No. 12 at 13-14). Bradford argues that the ALJ did not include a specific rationale or function-by-function narrative discussion of the RFC assessment. (ECF No. 12 at 14). Instead, Bradford argues that the ALJ merely quoted boilerplate language that he evaluated "objective findings" and developed the RFC "by comparing" the allegations "with all of the evidence" and that he "considered the objective findings, statements of the claimant, and opinion evidence from medical and other sources...." (ECF No. 12 at 14 (citing Tr. 25)). Bradford particularly notes that the ALJ did not provide an explanation for why he included a limitation to avoid concentrated dog and cat dander. (ECF No. 12 at 14).

The Court holds that in finding that Bradford was capable of a range of medium work, the ALJ considered the record as a whole, including Bradford's subjective complaints. (Tr. 19-25). "Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "The duty of deciding questions of fact, including the credibility of [Bradford's] subjective testimony, rests with the Commissioner." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg*, 354 F.3d at 714 (citing *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991)).

12

The ALJ properly considered that Bradford's allegations were inconsistent with the record as a whole, including the medical opinions, his medical treatment, the medical evidence, and his daily activities. (Tr. 19-25). On July 24, 2012, Dr. Barbara Lutey wrote a note indicating that Bradford was excused from work for six (6) weeks, but that he may return to work on September 4, 2012. (Tr. 261). Dr. Lutey stated that Bradford could perform no prolonged standing or climbing. (Tr. 261). On August 15, 2012, Dr. Lutey stated that Bradford was unable to work until September 4, 2012. (Tr. 328). Dr. Lutey stated that Bradford could return to work on September 4, 2012 on light work activity, and after three weeks could resume medium work activity. (Tr. 328). The ALJ properly considered Dr. Lutey's medical opinions, but found them not entitled to more than some weight because there was no indication that Bradford's work limitations would continue after September 2012. (Tr. 24-25). The Court holds that the ALJ's RFC finding that Bradford could perform a medium range of work was supported by Dr. Lutey's opinion that Bradford could perform medium work within 12 months of his injury. (Tr. 20, 328).

The ALJ also determined that Bradford's minimal and conservative treatment after September 2012 did not support his allegation. (Tr. 23). Bradford injured his right ankle in 2012 when he fell off a ladder. Bradford initially received treatment in the emergency room. He followed up with doctor appointments and referrals to an orthopedist. (Tr. 250-53, 314-17, 323, 354). Bradford, however, received minimal treatment after September 2012 when Dr. Lutey opined that Bradford could perform medium work. The Court holds that Bradford's minimal and conservative treatment after September 2012 do not support his allegations of disabling pain. (Tr. 23). *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) ("As is often true in disability cases, the question was not whether Hogan was experiencing pain, but rather the severity of her

pain."). This finding is supported by the objective testing of Bradford's right ankle, which showed a fracture or an "old" fracture with minimal degenerative joint disease. (Tr. 19, 295, 302-05, 318-19, 323, 334, 354-57). Likewise, a lumber MRI showed "mild" degenerative changes. (Tr. 20, 297). Bradford exhibited normal gait, full strength, and no sensory deficits, and appeared in no acute distress. (Tr. 251-52, 273, 315, 318, 331, 335). Bradford's medical records after September 2012 did not exhibit any significant, objective abnormalities, just mild abnormalities. (Tr. 338, 248-50). The Court holds that such objective findings constitute medical evidence to support a finding that a claimant can perform light or medium work. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)(citing *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996)("Although specific articulation of credibility findings is preferable, [the Court] consider[s] the lack thereof to constitute a deficiency in opinion-writing that does not require reversal because the ultimate finding is supported by substantial evidence in the record."). Because the ALJ's findings are consistent with the objective medical evidence and Dr. Lutey's opinion, the Court holds that the ALJ properly determined the RFC based upon the record as a whole. (Tr. 25).

Bradford also argues that the ALJ erred by restricting him to no concentrated cat or dog dander. (ECF No. 12 at 14). However, Bradford testified that he had difficulty around dogs and cats. (Tr. 46). The Court holds that the ALJ did not err in giving some weight to Bradford's complaints when the ALJ fashioned the RFC. (Tr. 25).

Finally, the Court holds that the ALJ properly evaluated Bradford's daily activities when fashioning his RFC. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (holding that claimant was not unduly restricted in his daily activities, which supported a finding that his pain was not completely disabling). In his Function Report, Bradford indicated that he retained the ability to

maintain his personal care, shop, and watch television. (Tr. 207-11). The ALJ considered Bradford's activities in evaluating RFC. (Tr. 21, 23).

Bradford also contended that his work history supports his credibility. (ECF No. 12 at 8-9). However, the Court finds that Bradford's poor work history does not support his credibility. *See* Tr. 176. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (ALJ found that Buckner's "sporadic" work history prior to his alleged disability date "indicates that he was not strongly motivated to engage in meaningful productive activity even prior to the alleged onset of disability and weighs against his credibility in assigning reasons for not working). Bradford had very few years with earnings above the substantial gainful activity level. (Tr. 176). Thus, Bradford's work history weighs against his credibility.

Bradford also claimed that the ALJ failed to properly evaluate third-party statements. (ECF No. 12 at 9). Bradford argues that the ALJ did not address a third-party statement from Sheila Cernicek, from Bradford's former employer, stating that it did not have any available desk jobs for him in July 2012. (Tr. 185). The Court, however, notes that this statement does not demonstrate Bradford's limitations, particularly since this statement came only one month after Bradford's injury. Likewise, Bradford notes that, in July 2012, a Social Security employee opined that Bradford indicated that Bradford limped and had difficulties moving, and that he struggled to provide medical information and to remember doctor's names and treatment dates. (ECF No. 12 at 9). The Court again notes that the record does not indicate that this limitation continued after 2012. As previously discussed, the evidence before the ALJ and this Court does not demonstrate that Bradford's limitations impaired him for 12 continuous months. As a result, the Court finds that the ALJ was not deficient in mentioning these statements because these statements did not have any relevance as to whether Bradford was disabled under the Act. *See*

*Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (noting that "[a]lthough the ALJ did not address all of these specific claims" such discussion was not necessary because these statements did not have any bearing on the outcome of the claimant's case).

### B. VE Testimony Conflicted with DOT

Bradford claims that the vocational expert's testimony was inconsistent with the DOT. (ECF No. 12 at 10-13). Bradford contends that the ALJ did not satisfy his responsibility to ask the vocational expert the required questions regarding conflicts between the vocational expert's testimony and the DOT/Selected Characteristics of Occupations ("SCO"). (ECF No. 12 at 11). Rather, Bradford contends that the vocational expert merely stated that his testimony was consistent with the information contained in the DOT without making a finding on the existing conflicts. (ECF No. 12 at 11). Bradford stated that there was a conflict between the DOT and SCO and the vocational expert's testimony regarding limits on the use of foot and leg controls, hand and arm controls, ladders, ropes, scaffolds, ramps, stairs, and exposure to dog and cat dander. (ECF No. 12 at 12). Bradford contends that the non-exertional limits described by the ALJ are not detailed by the DOT or SCO and, therefore, the vocational expert's responses are "impliedly in conflict." (ECF No. 12 at 12). As a result, Bradford argues that the ALJ's step-five findings and conclusions are not supported by substantial evidence. (ECF No. 12 at 13).

The Court holds that there is no conflict between the vocational expert's testimony and the DOT and SCO that requires remand. *See Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation."). The DOT does not address operating foot controls and exposure to dog and cat dander. Therefore, no conflict exists as to these issues. Second, the DOT addresses climbing. The SCO defines climbing as ascending or

16

descending ladders, stairs, scaffolding, ramps, poles and the like, using feet and legs or hands and arms. (ECF No. 15 at 12). Although this could create a possible conflict with the DOT and the vocational expert's testimony, *see Moore*, 769 F. 3d at 990, none of the jobs identified by the vocational expert involve climbing. (ECF No. 12 at 12). Because there are no apparent conflicts between the vocational expert's testimony and the DOT/SCO, the Court finds that the ALJ properly relied on the vocational expert's testimony in finding Bradford was not disabled.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 11th day of March, 2016.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE